LUIS G. CESTERO ET AL., Petitioners, *v.* PUERTO RICO SUGAR BOARD, Respondent. PUERTO RICO LAND AUTHORITY, Appellant, *v.* PUERTO RICO SUGAR BOARD, Respondent.

Nos. 32, 36.   Decided April 12, 1962.

*Félix Ochoteco, Jr.,* for petitioners. *Alejandro Romanace* for the Sugar Board of Puerto Rico. *Antonio Riera, Ramón Gandía Biscombe, Félix Bello,* and *Osvaldo de la Luz Vélez* for the Land Authority of Puerto Rico.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Santana Becerra and Mr. Justice Blanco Lugo.

### JUDGMENT

On October 27, 1955, by public document executed by the Notary Antonio Riera, Franco Hernández Vargas and the Puerto Rico Land Authority executed a contract for agricultural advances and grinding of cane which was duly recorded eight days later in the Registry of Agricultural Contracts of Arecibo. By virtue of said contract the Land Authority granted the cane grower a crop loan up to the sum of $67,000 for the 1956 crop and of $55,000 for each one of the next three years' crops. It was specifically stated that the purpose of the debt upon negotiating the crop loan was "to carry out agricultural activities and be able to incur other expenses which are necessary for the planting of sugar cane" in several farms of the debtor and in others which he held as lessee. In the dispositive part of the contract the crop-loan creditor was bound to invest the amount of the loan "in the cultivation, development, preparation and administration of the sugar-cane plantations... *and the cutting and hauling...* to the factory owned by the Authority known as Central Cambalache," which was bound in turn to grind and convert into sugar the canes sent by the colono. The crop-loan creditor reserved the right to reduce the amount of the loan and to discontinue the loan advances whenever, in his opinion, such a measure was necessary for the protection of his interests, and likewise, he retained the right to *"increase the loan agreed upon to cover whichever additional expenses were necessary in relation to the afore-mentioned sugar-cane plantations."* Other provisions of the contract which must

be considered for the purposes of deciding the present controversy are the following, which because of their importance we copy literally:

"(f) It is further agreed, that if for any other reason due to the cultivation, planting, improvement, maintenance, administration, *cutting and hauling* of the cane, object of the present contract, it should be necessary for 'The Authority' to deliver to 'The Debtor' any sum or sums in excess of the crop-loan advances granted herein, the payment and return of such additional amounts shall be guaranteed in the same sugar-cane plantations in the form and manner agreed upon in the present document as to the sum or sums received by 'The Debtor' on account of the present crop loan, up to the sum of TWO THOUSAND NINE HUNDRED DOLLARS ($2,900).

"(f) It is agreed and stipulated, that if the proceeds of the sugar belonging to 'The Debtor,' from the crop indicated in the SECOND Clause of this deed *were not sufficient to cover* the sum or sums that 'The Debtor' might have taken under this contract, with its interest, *as well as any other debts which might arise under this contract in favor of 'The Authority,' then all the plantations of sweet canes which are planted or produced in 'The Properties' described in the FIFTH Clause of this deed, shall be considered expressly encumbered and affected,* as well as all the sugar and molasses which are produced from said cane, in whatever form, during the following grinding season of nineteen-sixty (1960) and during all the grinding seasons and subsequent crops, up to the full payment of this loan and its interest and any other debts incurred by 'The Debtor' under this contract, said cane, sugar and molasses guaranteeing the payment of the balance which might result in favor of 'The Authority,' up to the full payment of this loan and its interest and other debts incurred hereunder, it being agreed that said lien shall be expressly constituted from this date, in order that it may timely operate pursuant to the covenants expressly agreed upon herein by the parties and pursuant to the Law.

. . . . . . . .

"(p) The failure on the part of 'The Authority' to insist in the strict compliance by 'The Debtor' with the terms, covenants, stipulations, and conditions of this contract, or of any one of them, or the failure to exercise any right granted to 'The Authority' hereunder in the event of its nonperformance

by 'The Debtor,' shall not be considered nor interpreted as a waiver or relinquishment of the rights of 'The Authority' to take advantage of such nonperformance, or to exercise its rights pursuant to the terms of this contract."    (Italics ours.)

At the time of executing the deed, the parties included an explanation to the effect that the crop-loan debtor reserved the right to pay at any time any amount which he owed the Land Authority under the contract and from that moment the rights and obligations created thereunder would be considered extinguished.

For the grinding season of 1956 the Land Authority advanced to colono Hernández Vargas a total amount of $70,987.66 for the planting, growing, and conditioning of the sugar-cane plantations and $20,677 for cutting and hauling.

According to the testimony of Mr. Juan F. Billoch, head of the General Accounts of the Land Authority, the different liquidations of sugar which corresponded to the colono were applied in the first term to cover the advances made to the colono for cutting and delivery, according to the established practice of the industry, and later they were primarily applied to the interest, and the remaining balance, if any, would be credited to the crop-loan debt itself.    As it appears from the documentary evidence presented, the colono was still in debt for the sum of $7,185.58 of the loan for the crop of 1956.    During said year he was advanced $1,087.66 in excess of the sum of $69,900 which had been stipulated as the limit of the loan.

For the crop of 1957 the colono was advanced the sum of $59,734.74 as crop loan, the Central Monserrate was paid a debt of $11,584.84 for crop loans of previous years, and he was advanced the sum of $26,911 for cutting and hauling. The liquidations or amounts received from the colono were applied in the same manner that has been explained in respect to the crop of 1956.    The final outcome was that the

colono was still in debt for the sum of $17,351.39 for the loan properly speaking, the sum of $11,584.84 paid to the Central Monserrate, the sum of $393.61 for interest on the amount paid for crop-loan advances, $262.80 for interest on the amount paid to the Central Monserrate, $162.78 for interest on a mortgage note and the crop-loan debt of 1956. For the crop of 1957 he was given advances in excess for the sum of $1,834.74.

In December 1956 Hernández Vargas sold to Luis G. Cestero three of the farms subject to the crop-loan contract and in like manner he subleased to him two others whose crops were equally subject to said contract. In the deed of sale as well as in the sublease a clause was included which read as follows:

"The three mentioned farms, together with others, are subject to a crop-loan contract in favor of the Puerto Rico Land Authority as guarantee for money up to the sum of SEVENTY-SEVEN THOUSAND DOLLARS ($77,000) to cover the crop of the year nineteen fifty-six and up to FIFTY-FIVE THOUSAND DOLLARS ($55,000) during each of the crops of nineteen fifty-seven, nineteen fifty-eight and nineteen fifty-nine, together with other amounts to cover advances, interest, costs and operation expenses."

The vendors were bound to negotiate and obtain the cancellation of the aforesaid crop-loan contract so that Cestero would be at liberty to grind the cane to be harvested by him on the said three farms and the two subleased and to begin to grind the cane at the factory of Cooperativa Los Caños.

1. On September 16, 1957 Cestero resorted to the Sugar Board to request authorization to transfer from Central Cambalache to Central Los Caños the grinding of the cane produced in the farms subject to the crop-loan contract made by Hernández Vargas. The Land Authority objected to such request and alleged that Hernández owed the Authority a certain amount by way of crop-loan advances. After the proper hearing, the Board issued an order on December 2,

1957 in which, among other things, it indicated that "it was proved that the colono Luis G. Cestero had *personal knowledge* of the *existence* of the *crop-loan debt* incurred by Mr. Franco Hernández Vargas with the Central Cambalache; that Central Los Caños granted crop-loan advances to colono Cestero for the 1958 grinding season and that Central Cambalache did not finance colono Cestero for the 1958 grinding season." It further decided that there remained an unpaid balance from the loan-contract in favor of Central Cambalache, and that therefore, Cestero was not at liberty to grind the sugar cane produced in the farms acquired by sale and sublease from Hernández Vargas since said cane was encumbered by a crop-loan and grinding contract duly recorded and executed by the former owner and lessor of said farms, and because the term of the contract had not expired nor had the debt been extinguished by its payment in money or specie. It was specifically provided that Cestero was obliged to grind in Central Cambalache the cane produced in the aforesaid farms for the grinding season of 1958, "until the full payment of the crop-loan debt incurred by the former owner and lessor with Central Cambalache." A petition for review was filed against this decision by the colono Cestero and the Cooperativa Azucarera Los Caños, bearing No. 32 in our registry.

Since the Sugar Board considered as proved that a certain amount was owed to Central Cambalache by virtue of the crop-loan contract executed by the former owner of the farms conveyed to Cestero, we shall affirm the decision appealed from in the light of our decision in *South P. R. Sugar Co.* v. *Sugar Board*, 82 P.R.R. 814 (1961), where we stated that when the contract between the central and the colono is one for agricultural advances and grinding, the colono is bound to grind his cane in the mill of the contracting central during the years specified in the contract independently of whether in some of those years he had fully paid in cane or money

the loans made by the central up to said date.[1]   By the same token but more so this doctrine is applicable where the colono still owes amounts by reason of agricultural advances and the corresponding contract was duly recorded in the Registry of Agricultural Contracts.[2]

2. On October 21, 1958, when there was still pending before us petition No. 32 to review the decision of the Sugar Board issued December 2, 1957, Cestero again resorted to the Sugar Board and requested that he be authorized to shift the grinding of 25% of his cane to the mill of the Central Los Caños for the grinding season of 1959.   Once more, the Authority opposed the request and stated, among other things, that the question raised was pending judicial review and that at any rate, there still existed a debt in its favor by way of the crop loan.   It specifically based its denial on the pronouncement of the former order which acknowledged the existence of a debt which had not been fully satisfied on the date in which the new request for shift of grinding place was filed.   The Sugar Board rendered its decision on June 25, 1959, and ordered the Authority to abstain from grinding Cestero's cane for the 1960 grinding season, and ordered the Land Authority to pay to the colono the sum of $11,162.47 which it had allegedly received in excess of what was owed. In support thereof it considered that the advances for cutting and hauling should be considered as part of the crop-loan contract and that since Cestero was only bound by the limits specified in the contract, of $69,900 in 1956, and $57,900 in

---

[1] In the case at bar it was contractually agreed that if the colono paid any balance which he owed under the contract, the obligations thereunder would cease. That is, that independently of the term stipulated therein, the colono could request a shift of grinding place.

[2] Even if it could be maintained that the petition is moot because the grinding season of 1958 had elapsed, we have chosen to decide the question on its merits in order to adjudicate the controversy conclusively, and thus avoid any further claim for damages, as indicated at the hearing in petition No. 32.

1957 and subsequent years, it appeared that the Authority had received from Hernández Vargas an excess of $14,277.78.

Against this decision, the Land Authority appealed to us. We granted the review under No. 36.

▮▮▮ It is unnecessary to discuss the question of res judicata or the sub judice matter raised by the appellant Authority nor the power of the Board to liquidate the crop-loan contract and to fix the amount of the debt or credit which would finally result. We shall assume these errors were not committed. However, having considered all the evidence presented, and especially the contractual provision which encumbers all the cane crop which is planted or produced in the farms to answer for the sums which the debtor had taken under the contract, *"as well as any other debts which might arise under this contract in favor of the Authority,"* and keeping in mind that the advances for hauling and delivery are not part of the crop loan as both parties admit, and that Cestero had personal knowledge *of the crop-loan debt* [3] as was decided by the Board in its decision of December 2, we cannot agree that the Authority received advances in excess represented by the amounts advanced for cutting and delivery. Now, for the purposes of the final liquidation of the debt incurred by Hernández Vargas, and according to the liquidation made on December 31, 1958, Cestero should answer only for the following amounts: (a) $7,185.58, balance of the crop-loan debt for the year 1956; (b) $17,351.39, balance of the crop-loan debt for the year 1957; and (c) the interest on said amounts. We cannot include in the liquidation the amount paid by the Authority to Central Monserrate for the purpose of satisfying a personal debt of the colono Hernández Vargas, nor the interest

---

[3] It is significant that the Board mentions that Cestero had personal knowledge of the crop-loan "debt" and does not mention that he had knowledge of the crop-loan contract.

accrued on said amount. This being so, the Board erred in ordering the Authority to abstain from grinding Cestero's cane since obviously, the debt which was the object of the crop-loan and grinding contract executed by Franco Hernández Vargas had not been fully satisfied.

The decision of the Sugar Board of December 2, 1957 is hereby affirmed and that of June 25, 1959 is reversed. The case is remanded for further proceedings not inconsistent with the present judgment.

It was so decreed by the Court as witnesses the signature of the Chief Justice.

(s) LUIS NEGRÓN FERNÁNDEZ
*Chief Justice*

I attest:

(s) IGNACIO RIVERA
*General Secretary*